# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
### (SOUTHERN DIVISION)

<table>
<tr>
<td>CHAMBERS OF<br>THE HONORABLE GINA L. SIMMS<br>UNITED STATES MAGISTRATE JUDGE</td>
<td></td>
<td>6500 CHERRYWOOD LANE<br>GREENBELT, MARYLAND 20770</td>
</tr>
</table>

July 10, 2023

LETTER TO COUNSEL

RE:    *Kadian Ophelia W-R. v. Kijakazi, Acting Commissioner of Social Security*
Civil No. GLS-22-2458

Dear Counsel:

Pending before this Court are cross-motions for summary judgment, filed by Plaintiff Kadian Ophelia W-R., and the Social Security Administration. (ECF Nos. 8, 10). Upon review of the pleadings and the record, the Court finds that no hearing is necessary. *See* Local Rule 105.6. (D. Md. 2021).

The Court must uphold the decision of the Social Security Administration ("SSA" or "the Agency") if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The substantial evidence rule "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig*, 76 F.3d at 589. This Court shall not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of the SSA. *Id.* For the reasons set forth below, I will deny the motions, reverse the Commissioner's decision in part, and remand the case back to the SSA for further consideration.

## I.    BACKGROUND

Plaintiff filed a Title II application for a period of disability and disability insurance benefits on January 15, 2019. In the application, the Plaintiff alleges that disability began on November 2, 2018. (Tr. 20). The claim was initially denied on June 27, 2019, and upon reconsideration, denied again on June 10, 2020. (*Id.*). On September 16, 2020, Plaintiff filed a written request for a hearing, which was granted. A telephone hearing was conducted on December 3, 2021 by an Administrative Law Judge ("ALJ").[1] (*Id.*). On December 21, 2021, the ALJ found that the Plaintiff was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. (Tr. 20-35). On August 1, 2022, the Appeals Council denied Plaintiff's request for review, and the ALJ's decision dated December 21, 2021 became the final and reviewable decision of the SSA. (Tr. 1). *See also* 20 C.F.R. § 422.210(a).

---

[1] At the hearing held on December 3, 2021, the Plaintiff, through her counsel, requested a closed period of disability beginning on the alleged onset date, November 2, 2018, through October 1, 2021. Plaintiff states that she returned to work as of October 2, 2021 as an account manager. (Tr. 20, 23).

*Kadian Ophelia W-R. v. Kijakazi, Acting Commissioner of Social Security*
Civil No. GLS 22-2458
July 10, 2023
Page 2

## II.    ANALYSIS PERFORMED BY THE ADMINISTRATIVE LAW JUDGE

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is deemed to have a disability if his/her "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work . . . which exists in significant numbers in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A).

To determine whether a person has a disability, the ALJ engages in the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520(a); 416.920(a). *See e.g., Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003); *Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015). The steps used by the ALJ are as follows: step one, assess whether a claimant has engaged in substantial gainful activity since the alleged disability onset date; step two, determine whether a claimant's impairments meet the severity and durations requirements found in the regulations; step three, ascertain whether a claimant's medical impairment meets or equals an impairment listed in the regulations ("the Listings"). If the first three steps are not conclusive, i.e., a claimant's impairment is severe but does not meet one or more of the Listings, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC"). A claimant's RFC is the most that a claimant could do despite her/his limitations, through consideration of claimant's "'medically determinable impairments of which [the ALJ is] aware,' including those not labeled severe at step two." *Mascio*, 780 F.3d at 635 (quoting 20 C.F.R. § 416.945(a)). Also at step four, the ALJ analyzes whether a claimant could perform past work, given the limitations caused by her/his impairments. Finally, at step five, the ALJ analyzes whether a claimant could perform jobs other than what the claimant performed in the past, and whether such jobs exist in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(i) - 404.1520(a)(4)(v).

At steps one through four, it is the claimant's burden to show that he is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Monroe v. Colvin*, 826 F.3d 176, 179-80 (4th Cir. 2016). If the ALJ's evaluation moves to step five, the burden then shifts to the SSA to prove that a claimant has the ability to perform work and, therefore, is not disabled. *Hunter v. Sullivan*, 993 F.3d 31, 35 (4th Cir. 1992).

Here, the ALJ evaluated Plaintiff's claim by following the sequential evaluation process outlined above. (Tr. 22-35). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 2, 2018, the alleged onset date of Plaintiff's disability, through October 1, 2021. (Tr. 22). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: irritable bowel syndrome, hypertension, and degenerative disc disease of the lumbar spine. (Tr. 23-27). The ALJ found these impairments were severe because these impairments cause more than minimal limitations to the Plaintiff's ability to perform basic

*Kadian Ophelia W-R. v. Kijakazi, Acting Commissioner of Social Security*
Civil No. GLS 22-2458
July 10, 2023
Page 3

work activities as required by SSR 85-28. (*Id.*). However, at step three the ALJ also determined that none of Plaintiff's impairments or combination of impairments met or medically equaled one or more of the Listings. (Tr. 27). Taking into account Plaintiff's severe impairments, the ALJ next assessed the claimant's RFC. Despite Plaintiff's severe impairments, the ALJ determined that Plaintiff had the RFC to:

> perform light work as defined in 20 CFR 404.1567(b) except the Plaintiff can lift, carry, push, and pull twenty pounds occasionally and ten pounds frequently. She can sit for six hours in an eight-hour workday. The Plaintiff can stand and walk for six hours in an eight-hour workday. The Plaintiff can only occasionally climb ramps and stairs; balance; stoop; kneel; crouch; and crawl. She can never climb ladders; ropes; or scaffolds.

(Tr. 27-33). At step four, the ALJ found that Plaintiff is capable of performing past relevant work as an Accountant, COD Billing Clerk, Accounting Clerk, and Bookkeeper. (Tr. 33-35). Before making a finding regarding step five, the ALJ conducted a hearing. (Tr. 65-71). At that hearing, a vocational expert ("VE") testified, relying upon "The Dictionary of Occupational Titles" and his own experience as a vocational rehabilitation counselor. The VE identified several sedentary jobs of the Plaintiff's past relevant work: an Accountant, COD Billing Clerk, Accounting Clerk, and Bookkeeper. (*Id.* at 66). The ALJ asked the VE whether a hypothetical person with the same age, education, and work experience as the Plaintiff, with her RFC, would be able to perform the past relevant work as actually performed or generally performed. (*Id* at 67-68). The VE opined that the hypothetical individual would be able to perform the past work as generally performed and as actually performed. (*Id* at 68).

In a second hypothetical, the ALJ added the following limitations to the individual's RFC: can lift, carry, push, and pull ten pounds occasionally, less than ten pounds frequently; and stand and walk for two hours in an eight-hour workday. The ALJ asked the VE whether the hypothetical person would be able to perform past relevant work as actually performed or generally performed in the national economy. (Tr. 68). The VE opined that, as lifting and carrying were kept at the sedentary exertion range, the individual would be able to perform the past relevant work as generally performed. (*Id.*). Then, the ALJ asked the VE if the hypothetical person would not be able to perform any past relevant work if the individual could never climb ropes, ladders, or scaffolds; is further limited to simple routine tasks; could only occasionally interact with supervisors, coworkers, and the public; and could only occasionally adjust to changes in workplace settings. (*Id.*). The VE opined that the hypothetical person would not be able to preform the past relevant work. (*Id.*).

At this point in the hearing, the ALJ inquired about the performance of other light and sedentary work. The ALJ asked the VE whether there exists other work that the hypothetical person would be able to perform at the light level. (Tr. 69). The VE opined that the individual could perform other light work existing in significant numbers in the national economy, e.g., as a mail sorter, assembler of small products, and a pricer. The ALJ asked the VE whether this same

*Kadian Ophelia W-R. v. Kijakazi, Acting Commissioner of Social Security*
Civil No. GLS 22-2458
July 10, 2023
Page 4

hypothetical individual with the same RFC, but now with mental limitations, would be able to perform any sedentary work. (*Id.*). The VE opined that the individual could perform other sedentary work existing in significant numbers in the national economy, e.g., a document preparer, stuffer/blower (toys and sports equipment), and an assembler.

In regard to the hypothetical individual being off-task, the VE opined, based off of his experience, that any time off-task that exceeds beyond 10% in an eight-hour workday would preclude gainful employment. (Tr. 70). Finally, the Plaintiff's attorney asked the VE about an employer's tolerance for absenteeism. (Tr. 71). The VE opined, based off of his experience, that anything beyond one day per month would not be tolerable by employer and would preclude a hypothetical individual from gainful employment.

At step five, the ALJ ultimately determined that Plaintiff was not disabled, because she could perform past relevant work as an Accountant, COD Billing Clerk, Accounting Clerk, and Bookkeeper, as the jobs were actually and generally performed based on the vocational expert's testimony. (Tr. 33-35).

## III.    DISCUSSION

In requesting summary judgment, Plaintiff contends that the ALJ failed to adequately evaluate the medical opinion of Victorine Ngang ("Ms. Ngang"), a certified registered nurse practitioner, who opined that the Plaintiff had a "marked" limitation in her ability to respond appropriately to customary stresses in a work setting. (*See* ECF No. 8-1, "Plaintiff's Motion," pp. 5-8). Specifically, Plaintiff maintains that the ALJ did not follow the rules for evaluating the medical opinion evidence of Ms. Ngang, namely 20 C.F.R. § 404.1520c(b)-(c) by failing to: (1) properly evaluate the objective medical evidence and the supporting explanations underpinning Ms. Ngang's medical opinion (supportability); and (2) properly evaluate the consistency of Ms. Ngang's medical opinion with other medical sources in the record. According to the Plaintiff, then, the ALJ erred by failing to include a mental health limitation in Plaintiff's RFC assessment.

In response, the SSA argues that the ALJ provided a detailed and well-supported articulation of why he found Ms. Ngang's medical opinion to be unsupported and inconsistent with other medical sources in the record. (ECF No. 10-1, "Defendant's Motion," pp. 5-13). Accordingly, the SSA contends that the ALJ's decision is clearly supported by substantial evidence and consistent with the standard set forth by 20 C.F.R. § 404.1520c, and that as such, it should be upheld. (*Id.*).

I have carefully reviewed the arguments and the record. I find persuasive Plaintiff's argument regarding the ALJ's assessment of the consistency of Ms. Ngang's medical opinion with other medical evidence related to Plaintiff's mental health. Accordingly, I find remand appropriate on that basis, for the reasons set forth below. Because this case is being remanded on the basis of the ALJ's failure to properly evaluate the consistency of Ms. Ngang's medical opinion, I will not discuss Plaintiff's other argument.

*Kadian Ophelia W-R. v. Kijakazi, Acting Commissioner of Social Security*
Civil No. GLS 22-2458
July 10, 2023
Page 5

As a preliminary matter, when assessing whether an ALJ properly evaluated medical opinions and prior administrative findings, 20 C.F.R. § 404.1520c governs for claims that were submitted after March 20, 2017. When an ALJ considers a medical opinion or prior administrative finding, he is precluded from giving it "any specific evidentiary weight, including controlling weight." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must consider a series of factors when assessing the persuasiveness of a medical opinion or prior administrative finding. Although not exhaustive, Section 404.1520c(c) lists the following as factors that an ALJ must consider when assessing the persuasive value of a medical opinion or prior administrative finding: (1) supportability; (2) consistency; (3) relationship to claimant; and (4) specialization. 20 C.F.R. § 404.1520c(c).

"Supportability" refers to "the objective medical evidence and supporting explanations provided by a medical source." 20 C.F.R. § 404.1520c(c)(1). If a medical professional relies on objective medical evidence, his/her conclusions will be viewed by the Agency as more persuasive. *Id.* "Consistency" generally refers to the consistency between the opinion given and "the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). Notably, Section 404.1520c provides that "supportability" and "consistency" are the "most important" factors for an ALJ to consider. *See* 20 C.F.R. § 404.1520c(a). As such, the ALJ is required to articulate how he considered those factors. 20 C.F.R. § 404.1520c(b)(2). As for the remaining factors, Section 404.1520c provides that an ALJ "may, but [is] not required to explain" how he considered them. *Id.* Therefore, it is not erroneous for an ALJ to remain silent on how he considered factors other than the consistency and supportability factors.

In his decision, the ALJ analyzed the evidence in the record, including: (1) medical opinions; (2) medical records and mental status examinations; (3) Plaintiff's statements; and (4) Plaintiff's past and present employment history. (*See* Tr. 23-26). When analyzing Ms. Ngang's medical opinion, the ALJ found it to be "unpersuasive" because it was "primarily based on the [Plaintiff's] subjective statements and not the mental status examination findings in [Ms. Ngang's] evaluations of the [Plaintiff]" and because it "conflict[ed] with other medical opinions that found non-severe mental impairments." (Tr. 25). Accordingly, the ALJ rejected Ms. Ngang's assessment that Plaintiff has a "marked" limitation in the ability to respond appropriately to customary stresses in a work setting as not consistent with the record. (*Id.*).

The Court now turns to analyzing whether the ALJ's findings regarding the consistency factor are adequately supported by substantial evidence.

The ALJ found Ms. Ngang's medical opinion to be inconsistent with "the mental status examination findings, and the consultative examiner's statements" as well as "other medical opinions that found non-severe mental impairments." (Tr. 25). Although the ALJ is not required to refer to every piece of evidence when rendering his decision, he must provide a reasoned basis for rejecting evidence that runs contrary to his ultimate conclusion. *Reid v. Comm'r Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014); *see also Dotson ex rel. T.W. v. Astrue*, Civ. No. SAG–10–2066, 2012 WL 1911110, at *4 (D. Md. May 24, 2012) ("An ALJ must affirmatively reject that

*Kadian Ophelia W-R. v. Kijakazi, Acting Commissioner of Social Security*
Civil No. GLS 22-2458
July 10, 2023
Page 6

contradictory evidence and explain h[is] rationale for so doing"); *Smith v. Heckler*, 782 F.2d 1176, 1181 (4th Cir. 1986) (same). When the record contains evidence that contradicts an ALJ's conclusion, an ALJ who fails to analyze such evidence and explain his basis for rejecting it precludes meaningful review on appeal. *See, e.g.*, *Davis v. Colvin*, Civ. No. TMD-13-3376, 2015 WL 390708, at *4 (D. Md. Jan 27, 2015).

The Court finds instructive *Markcus C. v. Comm'r Soc. Sec.*, Civ. No. KLL-22-1917, 2023 WL 1775612, at *8 (S.D. Ohio Feb. 6, 2023). In *Markcus C.*, the claimant suffered from a variety of mental impairments, including post-traumatic stress disorder and anxiety. *Id.* at *1. Upon examination, two state agency psychological consultants opined that the claimant should be limited to "brief superficial interactions with the general public, coworkers, and supervisors." *Id.* The ALJ found those opinions to be only "somewhat persuasive" because they were only "somewhat consistent" with the evidence, and other evidence existed that contradicted the proposed limitation(s). *Id.* at *5. Accordingly, the ALJ did not include the limitations proposed by the state agency psychological consultants in the claimant's RFC. *Id.* However, the court held that there were multiple pieces of evidence in the record that supported the state agency psychological consultants' proposed RFC limitation(s), which the ALJ failed to address. *Id.* at *7. In particular, the court found that the ALJ "failed to explain how she evaluated the cited records and conflicting, related records." *Id.* at *8. As a result, the court ultimately held that the ALJ failed to adequately evaluate the state agency psychological consultants' opinions in accordance with 20 C.F.R. § 404.1520c(b)(2). Thus, substantial evidence did not exist to support the ALJ's finding. *Id.*; *see also Paul B. v. Kijakazi*, Civ. No. NKM-20-78, 2022 WL 989242, at *4 (W.D. Va. Mar. 31, 2022) (holding that the ALJ erroneously overlooked a medical professional's supporting evidence and explanations when he found the medical professional's proposed limitations inconsistent with the objective medical evidence).

Here, the Plaintiff asserts that there are several pieces of evidence that the ALJ failed to consider which contradict the ALJ's consistency finding. Plaintiff claims that Ms. Ngang's opinions about Plaintiff's mental limitations are consistent with the evidence in the record because: (1) on February 9, 2019, Plaintiff presented herself to the emergency room where she suffered a panic attack; (2) on June 11, 2019, Plaintiff was diagnosed with Major Depressive Disorder during a psychiatric evaluation; (3) in February 2020, Plaintiff was again diagnosed with Major Depressive Disorder with recurrent episodes; and (4) on February 22, 2021 Plaintiff reported feelings of depression, anxiety, mood swings, nervousness, and inability to sleep. (*See* Plaintiff's Motion, p. 7).

The Court agrees with the Plaintiff. The ALJ found Ms. Ngang's medical opinion regarding Plaintiff's mental impairments and limitations to be "inconsistent with other evidence in the record." (Tr. 25). However, the ALJ provides an insufficient and unclear explanation regarding what "evidence in the record" he found to be inconsistent with Ms. Ngang's opinion. More important, the ALJ fails to provide an analysis of the evidence of record that *contradicts* his finding. Specifically, in his consistency analysis, the ALJ does not address the fact that: (1) on February 9, 2019, Plaintiff reported to the emergency room due to an increase in anxiety and panic attacks, suffered a panic attack while in the emergency room, and was administered medication;

*Kadian Ophelia W-R. v. Kijakazi, Acting Commissioner of Social Security*
Civil No. GLS 22-2458
July 10, 2023
Page 7

(2) on June 11, 2019, Dr. Dhir diagnosed Plaintiff with Major Depressive Disorder; (3) in February 2020, Natasha Miller, a licensed clinical professional counselor, likewise diagnosed Plaintiff with Major Depressive Disorder with recurrent episodes; and (4) on February 22, 2021, Plaintiff reported feelings of depression, anxiety, mood swings, nervousness, and inability to sleep. Put another way, the ALJ's opinion never addresses the contradictory evidence in the following transcript pages when performing his consistency analysis of Ms. Ngang's medical opinion: Tr. 464-66, 490-93, 510-12, 579. (*See* Tr. 23-26).

Because the ALJ failed to explain how the aforementioned evidence factored into his consistency finding at any point in the ALJ's decision, the Court cannot find that the ALJ properly evaluated the consistency of Ms. Ngang's medical opinion with other medical evidence in the record. *Markcus C.*, 2023 WL 1775612, at *8. Accordingly, the Court cannot find that substantial evidence supports the ALJ's consistency finding.

## IV.    CONCLUSION

For the reasons set forth above, both parties' summary judgment motions, (ECF Nos. 8, 10), are **DENIED**.  In addition, consistent with sentence four of 42 U.S.C. § 405(g), the Agency's judgment is **REVERSED IN PART** due to inadequate analysis. The case is **REMANDED** for further proceedings in accordance with this opinion. I express no opinion as to whether the ALJ's ultimate finding that Plaintiff is not disabled, and therefore, not entitled to benefits, is correct. The Clerk of the Court is directed to **CLOSE** this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as such. A separate Order follows.

Sincerely,

_____/s/_____
The Honorable Gina L. Simms
United States Magistrate Judge